## APPEAL OF GEORGE S. MEPHAM.

Docket No. 1981.   Submitted October 15, 1925.   Decided February 3, 1926.

Value of intangibles determined as of March 1, 1913, as a basis of gain on subsequent sale.

*George H. Moore, Esq.*, for the taxpayer.
*Arthur J. Seaton, Esq.*, for the Commissioner.

Before Sternhagen, Lansdon, and Arundell.

This is an appeal from the determination of a deficiency in income taxes for the calendar year 1919 in the amount of $44,316.51. The Commissioner also found a deficiency for the year 1920 in the amount of $140.92, and for the year 1921 in the amount of $7.57, but no contention is made as to the deficiencies for these two years by the taxpayer. The deficiency for the year 1919 results from the inclusion in income of the alleged profit made by the taxpayer on the sale of his business in that year.

### FINDINGS OF FACT.

The taxpayer is an individual residing in St. Louis, Mo., and was, during the year 1919, doing business under the firm name of George S. Mepham & Co.

More than 20 years ago the taxpayer established the business of manufacturing dry color and pigments. The factory was located in East St. Louis, Ill. In connection with the operation of the plant, the taxpayer had trouble with the city authorities and with his neighbors, because, in the burning of sulphate of iron, from which his product was made, sulphuric acid was given out, which prevented comfortable living in the vicinity. In 1903 or 1904 the taxpayer purchased the American rights to certain patented English inventions, which, when adapted and installed in his plant, served to eliminate the fumes. In connection with the installation of the process, there was spent between $40,000 and $50,000 in experiments and in building and rebuilding furnaces. These patents expired in 1909 and, in the years 1912, 1913, and 1914, were written off the books of the taxpayer. However, the process as developed by the taxpayer remained secret from the public and the trade and was secret in 1919 when the business of the taxpayer was sold.

Some time prior to November 25, 1919, the taxpayer's health failed. He decided to dispose of his business, as his wife knew nothing about carrying it on and there was no one else to take his place. C. K. Williams, his keenest competitor, had expressed a desire to purchase the business if the taxpayer ever decided to sell. The taxpayer had the utmost confidence in the integrity of Williams and felt that he would be the proper man to carry on the business the taxpayer had built up. He thereupon made known to Williams that the property was for sale and the latter came to St. Louis to investigate it with a view to purchasing the same.

As a result of the negotiations, the taxpayer and Williams, under date of November 25, 1919, entered into an agreement and contract of sale whereby the taxpayer agreed to transfer and convey to Wil-

liams the business known as George S. Mepham & Co., including all of the tangible assets, and by the same instrument conveyed to Williams the personal property of the business. The tangible assets were described in the contract more particularly as follows:

| | |
|---|---|
| Inventory (crude and manufactured merchandise) | $70,072.27 |
| Accounts receivable | 41,650.62 |
| Cash | 13,391.46 |
| Real estate, buildings and machinery | 174,885.15 |

This property was to be conveyed free and clear of incumbrances and outstanding indebtedness. It was further agreed in the contract of November 25, 1919, that the real estate of the taxpayer used in his business in the City of East St. Louis, Ill., should be conveyed by the taxpayer to a corporation, thereafter to be organized in Illinois under the name of George S. Mepham & Co., or a similar name, which might be permitted by the authorities of that State. The contract further provided that the corporation to be organized should have a paid-up capital stock of $300,000, to be divided into 3,000 shares of the par value of $100 each.

The price agreed on by the parties in the above-mentioned contract was $300,000, to be paid, $150,000 in cash and the balance in eight promissory notes, all of which were dated November 24, 1919, and payable at the Merchants Laclede National Bank of St. Louis, Mo., on the dates and in the amounts set forth below:

| | |
|---|---|
| 1. Due January 15, 1921 | $30,125 |
| 2. Due January 15, 1922 | 27,800 |
| 3. Due January 15, 1923 | 26,600 |
| 4. Due January 15, 1924 | 25,400 |
| 5. Due January 15, 1925 | 24,200 |
| 6. Due January 15, 1926 | 23,000 |
| 7. Due January 15, 1927 | 21,800 |
| 8. Due January 15, 1928 | 10,600 |

The face amount of the notes included interest at the rate of 6 per cent to the date of maturity. It was further agreed that the notes were to be deposited in escrow in the Merchants Laclede National Bank of St. Louis with the entire capital stock of the corporation of George S. Mepham & Co. attached thereto, but that the the full voting rights in the stock were to be exercised by Williams.

The agreement was carried out substantially as in the contract provided. The corporation was organized and, under date of December 4, 1919, Williams transferred to George S. Mepham & Co., a corporation, the property theretofore conveyed to him by George S. Mepham, and the real estate theretofore owned by George S. Mepham, and used in the business, was also transferred to the corporation.

On the same date, to wit, December 4, 1919, all of the stock was issued to Williams, except four qualifying shares. Thereafter, on

the same day, all of the shares theretofore issued to Williams were surrendered and canceled and the same number that had been issued to Williams were issued to Mepham, who immediately endorsed said shares in blank and attached them to the notes given by Williams, the notes with the stock attached being placed in escrow with the Merchants Laclede National Bank, as provided in the agreement of November 25, 1919.

The issuance of the stock in the name of the taxpayer was done at the suggestion of counsel for the taxpayer and purely to protect him in case of the death of Williams. The beneficial interest in the stock was at all times in Williams. The escrow agreement provided for the release of a certain portion of the stock with the payment of each of the notes.

The taxpayer, in making the sale and disposition of the business owned by him and known as George S. Mepham & Co., transferred to Williams not only all of the tangible assets of that business, both real and personal, but also all of the intangible assets, and, for a period of five months after the sale, the taxpayer gave his services without charge to the business of George S. Mepham & Co., a corporation. The value of the tangible assets belonging to the taxpayer during each of the five years prior to 1913 was as follows:

| | |
|---|---:|
| 1908 | $203, 831. 88 |
| 1909 | 215, 635. 13 |
| 1910 | 223, 748. 92 |
| 1911 | . 244, 276. 04 |
| 1912 | 272, 306. 29 |

The earnings of the taxpayer during the same period of time were as follows:

| | |
|---|---:|
| 1908 | $28, 358. 31 |
| 1909 | 39, 095. 21 |
| 1910 | 31, 132. 59 |
| 1911 | 42, 029. 60 |
| 1912 | 43, 329. 33 |

At the time of the sale of the business to Williams, the intangible assets were worth not less than $67,965. The value of these assets on March 1, 1913, was not less than $67,965.

### DECISION.

The deficiencies determined by the Commissioner for 1920 and 1921 are approved. The deficiency for 1919 will be computed in accordance with the foregoing findings of fact and the following opinion and will be settled on 15 days' notice, in accordance with Rule 50.

## OPINION.

ARUNDELL: The Commissioner, in computing the taxable gain from the sale, depreciated the tangible assets down to the date of sale and refused to allow any value for intangibles owned by the taxpayer, both on the theory that there were no intangible assets of value, and, further, that the sale did not purport to dispose of any intangibles, even if the taxpayer owned any of value. The taxpayer conceded the correctness of the Commissioner's action in depreciating the tangible assets.

The taxpayer was the sole proprietor of the business of George S. Mepham & Co., which was engaged in the manufacture of dry color and pigments. The business was run on very conservative lines and the accounts were kept in the same conservative way. For a number of years prior to March 1, 1913, the taxpayer had successfully operated his business and had built up a good will of considerable value. The difficulty in the manufacture of his product came from the emission of sulphuric fumes, which caused trouble with his neighbors and the municipal authorities. He had, in the early days of his business, acquired certain American, rights to British patents, which he further developed and adapted to his needs, but the process so adapted was never patented. This secret process served to eliminate the fumes and thus permitted him to carry on his manufacturing while his competitors were in constant difficulties. This secret process was unknown to the trade and to the public at the time of the sale of his property to Williams. The testimony clearly establishes the fact that the taxpayer, in disposing of his business, sold not only the tangible property used in the business, but also the good will and other intangible assets, including the secret process heretofore mentioned. We have found that the intangible assets were, on March 1, 1913, worth $67,965. This amount should be added to the value of the tangible assets as determined by the Commissioner, and the total figure thus obtained should be used in determining the profit, if any, on the sale of the taxpayer's business to Williams in 1919.